## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **ELIZABETH YORBA**, Individually and on behalf of other employees similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>**Barrington School, LLC**, *et al.*<br><br>Defendants. | Case No. 2:21-cv-691<br><br>**Judge: Hon. Edmund A. Sargus**<br><br>**Magistrate Judge: Hon. Elizabeth Preston Deavers**<br><br>**JOINT MOTION FOR APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT AND BRIEF IN SUPPORT** |

Representative Elizabeth Yorba ("Representative Plaintiff" or "Named Plaintiff") and Defendants Consolidated Learning Centers, Inc., Jelly Bean Junction Learning Center, LLC, Jeffrey A. Roby, Bonnie Roby, Barrington School, LLC, and Jessica Hoffman ("Defendants") (collectively, the "Parties") respectfully move this Court for an Order approving their Fair Labor Standards Act ("FLSA") settlement. The settlement was reached by experienced wage and hour counsel during arms-length, good faith negotiations.

The following documents are submitted for the Court's approval:

Exhibit 1: Collective Action Settlement Agreement and Release (the "Agreement")[1], with the following Exhibits:

> Exhibit A: Proposed Stipulated Order Granting Joint Motion for Approval of Collective Action Settlement and Dismissal With Prejudice
>
> Exhibit B: Notice of Settlement of Collective Action Lawsuit.

---

[1] Unless otherwise noted, all capitalized words and phrases used throughout this motion and brief shall have the same meaning as set forth in the Collective Action Settlement Agreement and Release.

Exhibit 2: Declaration of Matthew J.P. Coffman and Peter Contreras.

## **MEMORANDUM IN SUPPORT**

**I.  FACTUAL AND PROCEDURAL BACKGROUND.**

   A.  <u>Summary of the Claims and Procedural History</u>.

On February 17, 2021, Representative Plaintiff filed this case (the "Lawsuit" or the "Action") against Defendants on behalf of herself and other allegedly similarly situated current and former hourly pre-school employees. (ECF No. 1).

In the Action, Representative Plaintiff alleged that Defendants failed to pay her and other hourly pre-school employees of Defendants overtime for all hours worked in excess of 40 in a workweek in violation of the Fair Labor Standards Act, § 201 *et seq.* ("FLSA"). Specifically, Representative Plaintiff alleged that Defendants violated the FLSA by failing to account for all hours worked by hourly employees at Defendants' various preschool locations. (Coffman Decl. ¶ 14; Contreras Decl. ¶ 9; ECF No. 1). Representative Plaintiff alleged that Defendants paid employees through at least two (2) different entities when employees worked at more than one pre-school location during a given pay period and that such pay practices violated the FLSA because the Defendants maintained interrelated operations and common management/ownership of the various preschools. (Coffman Decl. ¶ 14; Contreras Decl. ¶ 9; ECF No. 1). Representative Plaintiff also alleged Defendants failed to track and pay her and other hourly employees for all travel time to and from worksites during the workday resulting in unpaid overtime wages. (Coffman Decl. ¶ 15; Contreras Decl. ¶ 10; ECF No. 1). Defendants deny these allegations, deny any joint or single employer relationship, and assert that they properly paid their hourly employees, including Representative Plaintiff, for all hours worked.

On May 3, 2021, the Parties filed a Joint Motion to Stay the Case because they agreed to engage in settlement discussions. (ECF No. 14). The Court granted the Parties' Motion to Stay the Case and ordered that they file a joint status report on or before August 27, 2021, unless the action was dismissed first. (ECF No. 15).

The Parties engaged in good faith settlement discussions over the course of approximately three (3) months. Prior to the Parties' settlement discussions, Defendants provided time and compensation records for Representative Plaintiff and other hourly preschool employees that Representative Plaintiff contends are similarly situated. (Coffman Decl. ¶ 17; Contreras Decl. ¶ 12).

Plaintiffs' Counsel performed a damages analysis using this information. (Coffman Decl. ¶ 18; Contreras Decl. ¶ 13). After completing the analysis, Plaintiff served a settlement demand on December 6, 2021. (Coffman Decl. ¶ 19; Contreras Decl. ¶14). The Parties then exchanged numerous settlement proposals before ultimately reaching an agreement on principal terms on March 3, 2022. The Parties filed a Status Report on March 7, 2022 advising the Court of the settlement reached days earlier. (ECF No. 22). The Parties filed additional status reports on April 6, 2022 (ECF No. 24), May 9, 2022 (ECF No. 26), and June 6, 2022 (ECF No. 28).

In addition to the Representative Plaintiff, the following individuals have joined the case to date: Sherry Rechtiene,[2] Darianne Seward,[3] Kensington Brooks,[4] and Kelly Brooks-Matheny[5] (collectively "Opt-In Plaintiffs").

    C.    <u>Summary of the Key Settlement Terms</u>.

---

[2] ECF No. 2-1.
[3] ECF No. 3-1.
[4] ECF No. 4-1.
[5] ECF No. 7-1.

The total settlement amount is $44,000.00. This amount includes: (a) all individual settlement payments to 61 Plaintiffs, including all Potential Opt-In Plaintiffs[6], Representative Plaintiff and Opt-In Plaintiffs in amount of $24,132.34; (b) a service award of $2,000 to Representative Plaintiff for her services in bringing and prosecuting this Action and general release provided to Defendants; (c) Plaintiffs' Counsel's attorney fees and litigation expenses in the amount of $15,066.67; and (d) the cost of settlement administration in the amount of $2,801.[7] (Coffman Decl. ¶ 27; Contreras Decl. ¶ 22).

A Settlement Notice (attached to the Agreement) and Settlement Payment will be sent to each Potential Opt-In Plaintiff, Representative Plaintiff and Opt-In Plaintiff. Potential Opt-In Plaintiffs who elect to participate in the Settlement by endorsing, depositing and/or cashing the Settlement Payment will become Participating Plaintiffs under the Agreement and bound thereby. Those who do not retain the right to pursue their own claims. (Coffman Decl. ¶ 32; Contreras Decl. ¶ 27).

Total potential damages for the collective were calculated by analyzing timekeeping and payroll data on total hours worked by Potential Opt-In Plaintiffs, Representative Plaintiff and Opt-In Plaintiffs at all relevant facilities owned or operated by Defendants. (Coffman Decl. ¶ 18, 35; Contreras Decl. ¶ 13, 30). Individualized damages were then computed based on the payroll and timekeeping data. (Coffman Decl. ¶ 31; Contreras Decl. ¶ 26).

---

[6] Representative Plaintiff, Opt-In Plaintiffs, and Potential Opt-In Plaintiffs will receive their payments with the Settlement Notice attached as Attachment B to the Settlement Agreement, and only those Potential Opt-In Plaintiffs who endorse, sign, and/or cash their payments will be bound by the terms of the Agreement as Participating Plaintiffs.

[7] The Settlement Agreement provides that Plaintiffs' counsel will seek an award of up to $17,867.66. However, this figure includes the $2,801 to be paid to the settlement administrator, which will be paid directly to the administrator by Defendants. Accordingly, Plaintiffs' counsel are only seeking $15,066.66 in attorney's fees and costs. (Coffman Decl. ¶ 40, 41; Contreras Decl. ¶ 35, 36).

Thus, total alleged unpaid overtime for the collective was determined to be $16,583.60 for a three-year period. Each Potential Opt-In Plaintiff who elects to participate in the settlement will receive 100% of their alleged calculated damages for a three-year statute of limitations and approximately an additional 44% of their damages as liquidated damages.[8] This type of allocation is commonly used in class and collective action settlements. (Coffman Decl. ¶ 35; Contreras Decl. ¶ 30).

This recovery is not just fair and reasonable, it is exceptional. *See*, *Shane Group Inc. v. Blue Cross Blue Shield of Michigan*, 833 Fed.Appx. 430, 431, (6th Cir., Jan. 14, 2021) (holding that 32% of alleged damages was a substantial recovery for the class); *see also Donnell Smith, et al. v. SAC Wireless, LLC,* No. CV 20-10932, 2022 WL 1744785, at *3 (E.D. Mich. May 31, 2022) (approving FLSA settlement providing payments of approximately 115% of plaintiffs' possible damages and noting the amount "greatly exceeds the typical 7-11% recovery in FLSA cases."), citing *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1609, 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010) (citing Frederick C. Dunbar, Todd S. Foster, Vinita M. Juenja, Denise N. Martin, Recent Trends III: What Explains Settlements in Shareholder Class Actions? (National Economic Research Assocs. (NERA) June 1995)).

In exchange for the total settlement amount payment and other consideration provided for in the Agreement, this Lawsuit will be dismissed with prejudice, and the Plaintiffs (including the Representative Plaintiff and Opt-In Plaintiffs) will release Defendant from federal, state, and local wage-and-hour claims, rights, demands, liabilities and causes of action that were asserted, or could have been asserted, in the Lawsuit. (Coffman Decl. ¶ 37; Contreras Decl. ¶ 32).

---

[8] Any Plaintiff who did not have at least $25 in alleged damages will receive a minimum payment of $25.

## II. PROPRIETY OF APPROVAL OF THE SETTLEMENT.

The Settlement is subject to approval by the Court pursuant to § 216(b) of the FLSA. Court approval is warranted on all scores.

### A. The Seven-Factor Standard is Satisfied.

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA § 216(b) "after scrutinizing the settlement for fairness." *Landsberg v. Acton Ents., Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353–55 (11th Cir. 1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute") (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946))).

As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford v. Lexington-Fayette Urban County Gov't*, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008). The Sixth Circuit uses seven factors to evaluate class action settlements, which are:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992); *Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983)), *Crawford*, 2008 WL 4724499 at *3.

The settlement in this Action satisfies each of these elements.

        1.     *No Indicia of Fraud or Collusion Exists.*

There is no indicia of fraud or collusion, and "[c]ourts presume the absence of fraud or collusion unless there is evidence to the contrary." *Bailey v. Black Tie Mgmt. Co. LLC*, No. 2:19-cv-1677, 2020 U.S. Dist. LEXIS 144274, at *6 (S.D. Ohio Aug. 12, 2020) (quoting *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006)). The Agreement was achieved only after arm's-length and good faith negotiations between the Parties over a period of several months. (Coffman Decl. ¶ 20; Contreras Decl. ¶ 15). As such, there is no indicia of fraud or collusion, and this factor favors approval of the settlement.

        2.     *The Complexity, Expense and Likely Duration of Continued Litigation Favor Approval.*

The policy favoring the settlement of collective actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming. *See, Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *8 (S.D. Ohio Aug. 17, 2018) ("[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them") (citations omitted).

If this Action had not settled, the Parties would be required to engage in costly litigation, such as formal written discovery, depositions, dispositive motions, trial, and potential appeals. The Settlement, on the other hand, provides substantial relief to the Eligible Settlement Participants promptly and efficiently, and amplifies the benefits of that relief through the economies of class resolution. (Coffman Decl. ¶ 34; Contreras Decl. ¶ 29).

        3.     *Investigation Was Sufficient to Allow the Parties to Act Intelligently.*

The Parties engaged in substantial investigation and analysis prior to negotiating the Settlement. Specifically, Defendant produced all necessary payroll and timekeeping information

for the damages analysis. Plaintiffs' Counsel was then able to calculate potential damages owed to the Plaintiffs in order to engage in good faith settlement discussions. (Coffman Decl. ¶ 31; Contreras Decl. ¶ 26).

In addition, the Parties assessed their potential risk of loss. Thus, the legal and factual issues in the case were thoroughly researched by counsel for the Parties, and all aspects of the dispute are well-understood by both sides.

    4.  *The Risks of Litigation Favor Approval.*

The settlement represents a compromise of disputed claims. Specifically, Representative Plaintiff allege that Defendants violated the FLSA by failing to account for all hours worked by hourly employees at Defendants' various preschool locations. Representative Plaintiff alleged that Defendants paid employees through at least two (2) different entities when employees worked at more than one pre-school location during a given pay period without totaling all hours worked for both entities, and that Defendants also failed to pay workers for drive time during their workdays. Representative Plaintiff maintains that such pay practices violated the FLSA because the Defendants maintained interrelated operations and common management/ownership of the various preschools. On the other hand, Defendants deny these allegations and assert that they are not joint or single employers under the FLSA or Ohio law and that they have fully compensated their employees for all time worked.

The Parties also disagree about whether the two-year limitations period for non-willful violations or three-year limitations period for willful violations applies, whether liquidated damages are appropriate, and whether the claims alleged can proceed collectively.

Accordingly, if this Action had not settled, it is possible that there would be no recovery for the Potential Opt-In Plaintiffs at all.

8

      5.      *The Opinion of Plaintiffs' Counsel Favor Approval.*

Plaintiffs' Counsel is highly experienced in wage-and-hour collective and class actions. At all times, they have acted in good faith and have vigorously represented the interests of the Potential Opt-In Plaintiffs, Representative Plaintiff and Opt-In Plaintiffs. Importantly, Plaintiffs' Counsel opined that the settlement is fair, reasonable, adequate, and in the best interests of Potential Opt-In Plaintiffs, Representative Plaintiff and Opt-In Plaintiffs. (Coffman Decl. ¶ 34; Contreras Decl. ¶ 29). "The recommendation of Class Counsel, skilled in class actions and corporate matters, that the Court should approve the Settlement is entitled to deference." *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *11 (S.D. Ohio Aug. 17, 2018). Accordingly, this factor favors approval of the settlement.

      6.      *The Reaction of Absent Class Members*.

If the Court approves the settlement, the Potential Opt-In Plaintiffs, Representative Plaintiff and Opt-In Plaintiffs will receive a Notice of Settlement and payment for their alleged damages as provided in the Agreement. They will be given the option to join the settlement by cashing and/or endorsing their settlement payments as explained in the Notice. Only those Potential Opt-In Plaintiffs who join the settlement will be bound by the Agreement. Those who do not join the settlement will retain the right to pursue their own claims. (Coffman Decl. ¶ 32; Contreras Decl. ¶ 27).

      7.      *The Public Interest*.

"Public policy generally favors settlement of class action lawsuits." *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *13 (S.D. Ohio Aug. 17, 2018) (quoting *Hainey v. Parrott*, 617 F. Supp.2d 668, 679 (S.D. Ohio 2007)). Like in *Wright*, "the settlement confers immediate benefits on the Eligible Settlement Participants, avoids the risks and

expense in further litigation, and conserves judicial resources." *Id.* Thus, as in *Wright*, the Court should find that this factor supports approval of the Settlement.

    B. <u>The Settlement Distributions Are Fair, Reasonable and Adequate</u>.

In addition to evaluating the seven factors discussed above, the Court must also "ensure that the distribution of the settlement proceeds is equitable." *Feiertag v. DDP Holdings, LLC*, No. 14-CV-2643, 2016 U.S. Dist. LEXIS 122297, at *18 (S.D. Ohio Sep. 9, 2016) (citations omitted).

    1. *The Individual Payments are Reasonable and Adequate.*

Before engaging in settlement discussions, Plaintiffs' Counsel analyzed the class data provided by Defendants' counsel. Damages were calculated by totaling all hours worked for the different Defendant entities as various preschools per workweek for each Plaintiff to determine additional overtime wages allegedly owed. Additional damages were computed for estimated travel time between various facilities during workdays. The ultimate damages amount was settled upon as reasonable based on the information learned during settlement discussions, and informal discovery with payroll and timekeeping data for the Plaintiffs.

The Net Settlement Fund equals approximately 144% of calculated alleged unpaid overtime for a three-year period. (Coffman Decl. ¶ 20; Contreras Decl. ¶ 15). This recovery is not just fair and reasonable, it is exceptional. *See*, *Shane Group Inc. v. Blue Cross Blue Shield of Michigan*, Case No. 19-2260, 2021 U.S. App. LEXIS 983, (6th Cir., Jan. 14, 2021) (holding that 32% of alleged damages was a substantial recovery for the class); *see also Donnell Smith, et al. v. SAC Wireless, LLC,* No. CV 20-10932, 2022 WL 1744785, at *3 (E.D. Mich. May 31, 2022) (approving FLSA settlement providing payments of approximately 115% of plaintiffs' possible damages and noting the amount "greatly exceeds the typical 7-11% recovery in FLSA cases."); (Coffman Decl. ¶ 36; Contreras Decl. ¶ 31).

All individual payments will be calculated proportionally. (Coffman Decl. ¶ 35; Contreras Decl. ¶ 30). As such, each Potential Opt-In Plaintiffs will have the opportunity to obtain compensation for alleged unpaid wages that are proportional to the amount of time he or she was employed by Defendants and the hours he or she worked each week within the period of time covered by the settlement.

2. *Representative Plaintiff's Service Award is Proper and Reasonable.*

The Agreement provides for a service award of $2,000 to Representative Plaintiff in addition to her individual payment. (Coffman Decl. ¶ 27; Contreras Decl. ¶ 22). Courts routinely approve service awards to named plaintiffs in class and collective action litigation, because service awards "are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, at *21 (S.D. Ohio Dec. 3, 2019) (quoting *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)). *See also*, *Shane Group, Inc.*, 2021 U.S. App. LEXIS 983 at *3. Service awards are meant to "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Id.* (quoting *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *7 (N.D. Ohio Mar. 8, 2010)).

Here, the Representative Plaintiff contributed significant time, effort, and detailed factual information enabling Plaintiffs' Counsel to evaluate the strength of this case and reach a settlement of this matter. (Coffman Decl. ¶ 22; Contreras Decl. ¶ 17). In addition, Representative Plaintiff agreed to execute a global release of all of their claims against Defendants in exchange for her service payment. (Coffman Decl. ¶ 24; Contreras Decl. ¶ 19).

11

     3.  *The Attorney Fees to Plaintiffs' Counsel Are Proper and Reasonable.*

  After the Court has confirmed that the terms of settlement are fair and reasonable, it may review the Agreement as to the provision of fees and litigation expenses to Plaintiffs' Counsel.

  The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). In *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir.1994), *cert. denied*, 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorney fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley*, 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir.1984)).

  The Agreement provides a payment of attorneys' fees to Plaintiffs' Counsel in the amount of one-third of the total settlement amount, or $14,666.67. A one-third fee award is "typical for attorney's fees in common fund, FLSA collective actions in this District…" *Hebert v. Chesapeake Operating, Inc.*, Case No. 2:17-cv-852, 2019 U.S. Dist. LEXIS 160792 at *8 (S.D. Ohio Sept. 20, 2019) (J. Morrison). This "is a normal fee amount in a wage and hour case." *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 U.S. Dist. LEXIS 204371, *13 (S.D. Ohio Nov. 25, 2019) (citing *Carr v. Bob Evans Farms, Inc.*, No. l:17-cv-1875, 2018 U.S. Dist. LEXIS 228221 (N.D. Ohio July 27, 2018)); *see, also, Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, *15 (S.D. Ohio Dec. 3, 2019) (approving an award of 33 1/3% of a settlement fund in a wage and hour case); *Call v. CTA Pizza, Inc.*, No. 2:18-cv-00696, 2019 U.S. Dist. LEXIS 181325, *12 (S.D. Ohio Oct. 21, 2019) (same); *Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657, *16 (N.D. Ohio Mar. 26, 2019) (same); *Wright v. Premier Courier,*

*Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, *21 (S.D. Ohio Aug. 17, 2018) (same); *Osman v. Grube, Inc.*, No. 3:16-cv-00802, 2018 U.S. Dist. LEXIS 78222, *6 (N.D. Ohio May 4, 2018) (same); *Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09CV1608, 2010 U.S. Dist. LEXIS 58912, *22 (N.D. Ohio June 15, 2010) (same).

Plaintiffs' Counsel accepted this case on a contingent fee basis and advanced all litigation fees, costs and expenses. (Coffman Decl. ¶ 39; Contreras Decl. ¶ 34). Thus, Plaintiffs' Counsel "assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee of recovery. This factor weighs in favor of approving the requested fee award." *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, at *19 (S.D. Ohio Dec. 3, 2019).

Finally, courts in this district acknowledge that "wage and hour class and collective actions, such as this, are inherently complex and time-consuming." *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 U.S. Dist. LEXIS 204371, at *10 (S.D. Ohio Nov. 25, 2019). Given the inherent complexity of a wage and hour collective action and the disputed issues of fact and law in this case, an award of one-third of the settlement fund appropriately compensates Plaintiff's counsel for their prosecution of this case, and advances the public's interests in rewarding attorneys who bring wage and hour cases. *See, e.g., Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, at *14 (S.D. Ohio June 24, 2011) ("society has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters.").

>    4.   *The Court Should Authorize Reimbursement to Plaintiffs' Counsel of Their Out-of-Pocket Expenses Incurred In This Case and Payment to the Settlement Administrator.*

Plaintiffs' Counsel should also be reimbursed their litigation expenses, which as of the date of this Joint Motion are $400.00.[9] The Settlement Administrator will additionally receive payment of $2,801.00 from the Gross Settlement Amount to be paid by Defendants within thirty (30) days of settlement approval as provided by the Agreement.

"Under the common fund doctrine, Class Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement." *Brandenburg*, 2019 U.S. Dist. LEXIS 204371 at *20. In fact, "[e]xpense awards are customary when litigants have created a common settlement fund for the benefit of a class." *Id*. Because Plaintiffs' Counsel's litigation expenses were incurred in the prosecution of the claims in this case and in obtaining settlement, the Court should award reimbursement of these expenses to Plaintiffs' Counsel.

## III.  CONCLUSION.

The Parties submit that this settlement is a fair and reasonable resolution of the disputed issues, which is consistent with the goal of securing the just, speedy, and inexpensive determination of every action. Accordingly, the Parties request that this Court: (1) enter the proposed Order Granting Joint Motion for Approval of Collective Action Settlement and Dismissal with Prejudice; (2) approve Plaintiffs' Counsel's request for attorney fees and expenses; (3) approve the requested service payment to Representative Plaintiff; (4) approve the payment to the Settlement Administrator; and (5) retain jurisdiction to enforce the settlement if necessary.

---

[9] As noted above in fn. 7, the Settlement Agreement provides Plaintiffs' counsel will seek an award of up to $17,867.67. However, that figure was computed by accounting for the $2,801 to be paid directly to the Settlement Administrator. Accordingly, Plaintiffs' counsel seeks $15,066.67 in attorney's fees and costs because the Settlement Administrator will be paid its $2,801 costs directly by Defendants when the Maximum Gross Settlement Amount is paid following approval.

Respectfully submitted,

**COFFMAN LEGAL, LLC**

*/s/ Matthew J.P. Coffman*
Matthew J.P. Coffman (0085586)
Adam C. Gedling (0085256)
Kelsie N. Hendren (1000041)
1550 Old Henderson Road
Suite 126
Columbus, Ohio 43220
Phone: 614-949-1181
Fax: 614-386-9964
Email: mcoffman@mcoffmanlegal.com
      agedling@mcoffmanlegal.com
      khendren@mcoffmanlegal.com

*/s/ Peter Contreras*
Peter Contreras (0087530)
**Contreras Law, LLC**
1550 Old Henderson Rd.
Suite 126
Columbus, OH 43220
Phone: 614-787-4878
Fax: 614-957-7515
Email: peter.contreras@contrerasfirm.com

*Attorneys for Named Plaintiff and those similarly situated*

*/s/Adam J. Rocco*
Adam J. Rocco (0083807) (Trial Attorney)
**VORYS, SATER, SEYMOUR AND PEASE LLP**
52 East Gay Street
Columbus, Ohio 43215
Phone: 614-464-6286
Fax: 614-719-4760
Email: ajrocco@vorys.com

*Counsel for Defendants
Consolidated Learning Centers, Inc.,
Jelly Bean Junction Learning Center, LLC,
Jeffrey A. Roby, and
Bonnie Roby*

*/s/Michael J. Shoenfelt*
Michael J. Shoenfelt (0091154) (Trial Attorney)
**VORYS, SATER, SEYMOUR AND PEASE LLP**
52 East Gay Street
Columbus, Ohio 43215
Phone: 614-464-5497
Fax: 614-719-4804
Email: mjshoenfelt@vorys.com

*Counsel for Defendants
Barrington School, LLC, and
Jessica Hoffman*

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of June 2022, a true and accurate copy of the forgoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

      */s/ Peter Contreras*
      Peter Contreras (0087530)